## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Sara R.,                                          Case No. 22-cv-1271 (KMM/TNL)

        Plaintiff,

v.                                                        **REPORT &**
                                                          **RECOMMENDATION**

Kilolo Kijakazi,
Commissioner of Social Security,

        Defendant.

---

Clifford Michael Farrell, Manring & Farrell, P.O. Box 15037, 167 North High Street, Columbus, OH 43215, and Edward C. Olson, Reitan Law Office, 80 South Eighth Street, Suite 900, Minneapolis, MN 55402 (for Plaintiff); and

Emily Carroll, Gabriel Bono, and James D. Sides, Social Security Administration, Office of the General Counsel, 6401 Security Boulevard, Baltimore, MD 21235, and Ana H. Voss, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Defendant).

---

## I. INTRODUCTION

Plaintiff Sara R. brings the present case, contesting Defendant Commissioner of Social Security's denial of disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income ("SSI") under Title XVI of the same, 42 U.S.C. § 1381 *et seq.*

This matter is before the undersigned United States Magistrate Judge on cross motions for summary judgment, Plaintiff's Motion for Summary Judgment, ECF No. 19, and the Commissioner's Motion for Summary Judgment, ECF No. 23. These motions have been referred to the undersigned for a report and recommendation to the district court, the

1

Honorable Katherine M. Menendez, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment, ECF No. 19, be **GRANTED IN PART and DENIED IN PART**; the Commissioner's Motion for Summary Judgment, ECF No. 23, be **DENIED**; and this matter be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

## II. PROCEDURAL HISTORY

On June 25, 2019, Plaintiff applied for DIB, and on July 8, 2019, Plaintiff applied for SSI. Tr. 76, 451-58. Plaintiff asserted that she has been disabled since August 1, 2018, due to bipolar I disorder; generalized anxiety disorder; panic disorder without agoraphobia; and post-traumatic stress disorder ("PTSD").[1] Tr. 76, 79. Plaintiff's applications were denied initially on October 22, 2019, and again upon reconsideration on August 11, 2020. Tr. 76, 284-367.

Plaintiff appealed the reconsideration of her DIB and SSI determinations by requesting a hearing before an administrative law judge ("ALJ"). Tr. 76, 390-91. The ALJ held a hearing in February 2021, and later issued an unfavorable decision. Tr. 73-99, 248-

---

[1] While Plaintiff also asserted that she had been disabled on the basis of physical impairments (namely, obesity; fibromyalgia; mixed stress and urge urinary incontinence; irritable bowel syndrome; migraine headaches; internal derangement of the right knee; and mild degenerative changes of the lumbar spine), Plaintiff's challenge here concerns only her mental impairments. *See* Pl.'s Mem. in Supp. at 7-11, ECF No. 17. Accordingly, the Court only discusses her mental impairments in this Report and Recommendation.

83.  After receiving an unfavorable decision from the ALJ, Plaintiff requested review from the Appeals Council, which was denied.  Tr. 1-7, 445-47.

Plaintiff then filed the instant action, challenging the ALJ's decision.  Compl., ECF No. 1.  The parties have filed cross motions for summary judgment.  ECF Nos. 19, 23. This matter is now fully briefed and ready for a determination on the papers.

### III. ANALYSIS

#### A.  Legal Standard

Disability benefits are available to individuals who are determined to be under a disability.  42 U.S.C. § 423(a)(1); 20 C.F.R. § 404.315.  An individual is considered to be disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505(a).  This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. § 404.1505(a).

The ALJ determines disability according to a five-step, sequential evaluation process.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past

relevant work; and if not, (5) whether she could perform any
other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). In general, the burden of proving

the existence of disability lies with the claimant. 20 C.F.R. §§ 404.1512(a), 416.912(a).

In this evaluation process, the ALJ determines the claimant's residual functional

capacity, which "is the most [s]he can do despite h[er] limitations." 20 C.F.R. §

404.1545(a)(1); *accord* 20 C.F.R. § 416.945(a)(1). "An ALJ determines a claimant's

[residual functional capacity] based on all the relevant evidence, including the medical

records, observations of treating physicians and others, and an individual's own description

of [his or her] limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)

(quotation omitted). "Because a claimant's [residual functional capacity] is a medical

question, an ALJ's assessment of it must be supported by some medical evidence of the

claimant's ability to function in the workplace." *Perks*, 687 F.3d at 1092 (quotation

omitted); *accord Schmitt*, 27 F. 4th at 1360. At the same time, the residual-functional-

capacity determination "is a decision reserved to the agency such that it is neither delegated

to medical professionals nor determined exclusively based on the contents of medical

records." *Norper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020); *see Perks*, 687 F.3d at 1092.

As such, there is no requirement that a residual-functional-capacity determination "be

supported by a specific medical opinion." *Schmitt*, 27 F. 4th at 1360 (quotation omitted).

Nor is an ALJ "limited to considering medical evidence exclusively." *Id.* (quotation

omitted). Accordingly, "[e]ven though the [residual-functional-capacity] assessment

draws from medical sources for support, it is ultimately an administrative determination

4

reserved to the Commissioner." *Perks*, 687 F.3d at 1092 (quotation omitted); *accord Schmitt*, 27 F. 4th at 1360.

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or if the ALJ's decision resulted from an error of law. *Nash v. Comm'r, Soc. Sec. Administration*, 907 F.3d 1086, 1089 (8th Cir. 2018) (citing 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018)).   Thus, the Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id.*  "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation omitted); *see, e.g.*, *Chismarich*, 888 F.3d at 979 (defining "substantial evidence as less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion" (quotation omitted)).

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it."  *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); *see Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021).  The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ."  *Boettcher*, 652 F.3d at 863; *accord Grindley*, 9 F.4th at 627; *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012).  "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole."  *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted).  Thus, "[i]f, after

reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *accord Chaney*, 812 F.3d at 676.

### B. ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of bipolar I disorder, generalized anxiety disorder; panic disorder without agoraphobia; and post-traumatic stress disorder,[2] and that none of these impairments individually or in combination met or equaled a listed impairment in 20 C.F.R. pt. 404, subpt. P, app.1.  Tr. 79-83.  The ALJ then found that Plaintiff had the residual functional capacity to perform light work[3] with the following nonexertional limitations:

> [Plaintiff] is able to understand, remember, and apply information to carry out instructions that can be learned within one month, including instructions that are more than simple but less than detailed in nature. She can interact with supervisors and co-workers up to an occasional basis but must not have any

---

[2] The ALJ also found that Plaintiff had the severe impairments of obesity; fibromyalgia; mixed stress and urge urinary incontinence; irritable bowel syndrome; migraine headaches; internal derangement of the right knee (severe but only when considered in combination with obesity); and mild degenerative changes of the lumbar spine (severe but only when considered in combination with obesity).  Tr. 79-83.  But again, Plaintiff challenges only the ALJ's analysis of her mental impairments.

[3] As set forth in the regulations,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the ALJ] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b); *accord* 20 C.F.R. § 416.967(b).

customer service interaction with the public. She is able to sustain concentration, persistence, and pace within normal work breaks for instructions that can be learned within one month, including instructions that are more than simple but less than detailed in nature. She is able to respond appropriately to infrequent and gradual changes in a routine work setting. She is able to make judgments on simple work-related decisions. She can work at a consistent pace throughout the workday but not on a production rate pace where each tasks must be completed within a strict timeline.

Tr. 83.

The ALJ found that Plaintiff was unable to perform her past relevant work as a nurse's assistant or caregiver, sales attendant, or dining room attendant. Tr. 90. However, the ALJ found that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Tr. 91-92. Specifically, based on Plaintiff's age, education, work experience, residual functional capacity, and the testimony of the vocational expert, the ALJ found that Plaintiff was capable of making a successful adjustment to the representative occupations of marker, mail clerk, and bench assembler. Tr. 91-92. Accordingly, the ALJ concluded that Plaintiff was not under disability. Tr. 92.

## C. Prior Administrative Medical Findings

Plaintiff's sole argument is that the ALJ failed to account for all the persuasive limitations opined by the state agency psychologists in the residual functional capacity. Pl.'s Mem. in Supp. at 7. Specifically, Plaintiff contends that the ALJ erred by limiting Plaintiff to "occasional" interaction with supervisors and coworkers, when the state agency

psychological consultants opined that Plaintiff should be limited to "brief and superficial" interactions.  *Id*. at 8-9.

### 1.  State Agency Psychological Consultants' Opinions

On initial review, one of the state agency psychological consultants, Michelle Hoy-Watkins, Psy.D., assessed Plaintiff's mental residual functional capacity.  Tr. 297-300, 312-14.

First, Dr. Hoy-Watkins opined that Plaintiff had understanding and memory limitations.  Tr. 298, 312.  She opined that Plaintiff was moderately limited in her ability to understand and remember detailed instructions.  Tr. 298, 312.  Plaintiff was not otherwise limited.  Tr. 298, 312.  Dr. Hoy-Watkins explained that Plaintiff's "memory functioning was intact based upon mental status exams and testing."  Tr. 298, 312.

With respect to Plaintiff's ability to sustain concentration, persistence, and pace ("CPP"), Dr. Hoy-Watkins opined that Plaintiff was moderately limited in her abilities to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.  Tr. 298-99, 312-13.  Plaintiff was otherwise not significantly limited in this area.  Tr. 298, 312-13.  Dr. Hoy-Watkins explained that Plaintiff "can sustain CPP for simple tasks," but her anxiety and PTSD "may limit [her] ability to sustain CPP for detailed or complex tasks."  Tr. 299, 313.

As for Plaintiff's ability to interact with others, Dr. Hoy-Watkins opined that Plaintiff was moderately limited in her abilities to interact appropriately with the general public and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. 299, 313. Dr. Hoy-Watkins opined that Plaintiff was otherwise not significantly limited. Tr. 299, 313. Dr. Hoy-Watkins explained that Plaintiff's "[h]istory of anxiety, panic symptoms, and hallucinations would do best with limited social interactions." Tr. 299, 313.

Lastly, with respect to Plaintiff's ability to adapt, Dr. Hoy-Watkins opined that Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting, but otherwise not significantly limited. Tr. 299, 313. Dr. Hoy-Watkins explained that Plaintiff "can adapt to ordinary changes in routine." Tr. 299, 313.

Dr. Hoy-Watkins concluded that Plaintiff "is capable of performing simple routine tasks on a sustained basis." Tr. 299, 313. Further, she opined that Plaintiff "can manage brief and superficial social encounters." Tr. 299, 313-14. Additionally, she wrote that Plaintiff "can tolerate predictable changes with low demands." Tr. 299, 314.

On reconsideration, Cynthia Crandall, Ph.D., L.P., affirmed Dr. Hoy-Watkins' findings with a few exceptions and additional comments. Tr. 338-340, 362-64. Dr. Crandall opined that Plaintiff did not have understanding and memory limitations. Tr. 339, 363. She also opined that Plaintiff was moderately limited in another category of social interaction: her ability to accept instructions and respond appropriately to criticism from supervisors. Tr. 339, 363. Further, Dr. Crandall wrote that Plaintiff "can manage brief and superficial social encounters," and her "ability to handle public contact would be reduced

9

but adequate to handle brief, infrequent and superficial contact." Tr. 340, 364. She also wrote that Plaintiff's "ability to tolerate and respond appropriately to supervision would be reduced but adequate to handle ordinary levels of supervision found in a custody work setting." Tr. 340, 364. Lastly, Dr. Crandall added that Plaintiff's "ability to tolerate and respond appropriately to stress and pressure in the work place would be reduced but adequate to handle the routine stresses of a routine, repetitive work setting." Tr. 340, 364.

### 2.  ALJ's Residual Functional Capacity

In limiting Plaintiff to "interact[ing] with supervisors and coworkers up to an *occasional* basis" and no customer service interaction with the public in the residual functional capacity, the ALJ analyzed the opinions of the state agency psychological consultants. Tr. 83 (emphasis added); *see also* Tr. 89. The ALJ summarized Dr. Hoy-Watkins and Dr. Crandall's mental findings as follows: "they limited [Plaintiff] to performing simple, routine tasks on a sustained basis with predictable changes, low demands, and brief and superficial interactions with others." Tr. 89. The ALJ found the prior administrative medical findings of the state agency psychological consultants "persuasive" because the opinions were "supported by [Plaintiff's] longitudinal treatment history for her mental impairments with some breakthrough exacerbations that generally improve in a short period." Tr. 89. Further, the ALJ found their opinions persuasive in light of the "many normal findings that outweigh the abnormal findings." Tr. 89. The ALJ also found the state agency psychological consultants' opinions "consistent with [Plaintiff's] significant activities of daily living" and the fact that Plaintiff "socializes with

10

her family on a regular basis[] and is able to interact briefly while shopping and with her providers." Tr. 89.

Plaintiff contends that the ALJ, without explanation, omitted the state agency psychological consultants' opinions that Plaintiff should be limited to "brief and superficial" interaction with others. Pl.'s Mem. in Supp. at 9. By limiting her to "occasional" interaction with supervisors and co-workers, Plaintiff argues that the ALJ's residual functional capacity does not accurately reflect Plaintiff's mental limitations. Pl.'s Mem. in Supp. at 10. Plaintiff contends that this error "caused the hypothetical posed to the vocational witness to be inaccurate." Pl.'s Mem. in Supp. at 10. Accordingly, Plaintiff asks the Court to reverse the decision of the Commissioner and order immediate payment of Social Security disability benefits or, in the alternative, remand Plaintiff's claim to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings. Pl.'s Mem. in Supp. at 11.

The Commissioner argues that the ALJ did not err by omitting a "brief and superficial" social interaction limitation in the residual functional capacity. Comm'r's Mem. in Supp. at 6, ECF No. 24. The Commissioner contends that an ALJ is not required to articulate how he considered each medical opinion from one medical source individually. Comm'r's Mem. in Supp. at 6. Further, the Commissioner argues that Plaintiff did "not show a significant discrepancy between [the state agency psychological consultants'] opinions and the ALJ's residual functional capacity." Comm'r's Mem. in Supp. at 7. The Commissioner contends that the ALJ incorporated a "superficial" interaction limitation "when he limited Plaintiff to 'up to' occasional interaction with

supervisors and coworkers, only 2.6 hours a day, and no customer service interaction with the public." Comm'r's Mem. in Supp. at 7. Additionally, the Commissioner contends that two of the jobs the ALJ found Plaintiff could perform, a marker and bench assembler, have the lowest possible level of interaction with people, and the interaction with people in those jobs is "not significant." Comm'r's Mem. in Supp. at 7. Thus, according to the Commissioner, even if the ALJ had adopted the state agency psychological consultants' wording of "brief and superficial" interactions, "Plaintiff does not show how it is more restrictive than the ALJ's [residual functional capacity] determination." Comm'r's Mem. in Supp. at 7.

### 3. Analysis

"Courts have recognized that the terms 'occasional' and 'superficial' are not coterminous." *Ashley E. A. v. Kijakazi*, No. 22-cv-280 (WMW/TNL), 2023 WL 2283455, at *6 (D. Minn. Jan. 30, 2023) (citations and internal quotations omitted), *report and recommendation adopted*, 2023 WL 2273153 (D. Minn. Feb. 28, 2023); *see also Eden v. Comm'r of Soc. Sec.*, No. 18-CV-0076-LTS-KEM, 2019 WL 7666532, at *2 (N.D. Ia. June 6, 2019) (quotation omitted) (citing cases), *report and recommendation adopted*, 2019 WL 5260476 (N.D. Ia. Oct. 17, 2019)); *see also, e.g., Redd v. Comm'r of Soc. Sec.*, No. 1:20-CV-222, 2021 WL 1960763, at *4 (W.D. Mich. May 17, 2021) ("With regard to social limitations, courts have distinguished limitations that concern 'the quality or nature of interactions' from limitations that concern 'the quantity of time involved with those interactions.'" (quoting *Kilgore v. Saul*, No. 1:19-CV-168, 2021 WL 932019, at *7 (E.D. Tenn. Mar. 11, 2021)); *Casey v. Comm'r of Soc. Sec.*, 2:18-cv-18, 2018 WL 6257432, at

*4 (S.D. Ohio Nov. 30, 2018) ("The terms 'occasional' and 'superficial' are not interchangeable."), *report and recommendation adopted*, 2019 WL 133177 (S.D. Ohio Jan. 8, 2019); *Hurley v. Berryhill*, No. 1:17-CV-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018) ("These limitations are not interchangeable, nor does one imply the other."). In doing so, courts have explained that "'[o]ccasional contact' goes to the *quantity* of time spent with the individuals . . . ." *Hurley*, 2018 WL 4214523, at *4 (quotation omitted) (emphasis added); *see Titles II & XVI: Determining Capability to Do Other Work—The Medical-Vocational Rules of Appendix 2*, SSR 83-10, 1983 WL 31251, at *5 (Soc. Sec. Admin. Jan. 1, 1983) (defining "occasionally" as "occurring from very little up to one-third of the time"); *see also, e.g.*, *Swank v. Comm'r of Soc. Sec.*, No. 2:20-cv-2396, 2021 WL 1345420, at *5 (S.D. Ohio Apr. 12, 2021) (citing cases). This is distinct from "'superficial contact' [which] goes to the *quality* of the interactions." *Hurley*, 2018 WL 4214523, at *4 (quotation omitted) (emphasis added); *see also, e.g.*, *Swank*, 2021 WL 1345420, at *5 (citing cases). Thus, "[e]ven a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions." *Sanders v. Astrue*, No. 11-cv-1356 (JNE/JJG), 2012 WL 1657922, at *12 (D. Minn. Apr. 17, 2012), *report and recommendation adopted as modified*, 2012 WL 1658988 (D. Minn. May 11, 2012). As such, "courts routinely find that limiting the *quantity* of time spent with an individual does not accommodate a limitation relating to the *quality* of the interactions—including a limitation to 'superficial' interaction." *Sue A. M. v. Comm'r of Soc. Sec.*, No. 3:22-cv-171, 2022 WL 14346260, at *4 (S.D. Ohio Oct. 25, 2022) (citing cases) (emphasis in original); *see also, e.g., Jason M. v. Comm'r of Soc. Sec.*, No. 3:21-cv-

00272, 2022 WL 4591305, at *4 (S.D. Ohio Aug. 17, 2022) ("The ALJ's conclusion that Plaintiff is capable of occasional interactions, without including a limitation that restricts him to superficial interactions, constitutes reversible error."); *Elaine S. v. Comm'r of Soc. Sec.*, No. 3:20-cv-00324, 2022 WL 4102814, at *5 (S.D. Ohio Sept. 8, 2022) ("Because the ALJ failed to either adopt the state agency psychologists' opinion that Plaintiff should be limited to only 'superficial' contact with others, or to explain why he did not do so, the matter must be remanded to the Commissioner for further consideration of this issue.").

As the Commissioner correctly notes, there is no requirement that a residual-functional-capacity determination "be supported by a specific medical opinion," including a state agency psychological consultant's opinion. *See Schmitt*, 27 F.4th at 1360 (quotation omitted). But the ALJ is required to "explain why a medical opinion was not adopted if it conflicts with the [residual functional capacity]." *Christine F. v. Kijakazi*, No. 21-cv-2048 (NEB/LIB), 2022 WL 3648674, at *5 n.3 (D. Minn. July 27, 2022), *report and recommendation accepted*, 2022 WL 3647808 (D. Minn. Aug. 24, 2022). "An ALJ's reasoning need only be clear enough to allow for appropriate judicial review." *Grindley*, 9 F.4th at 631 (quotation omitted). "While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency has no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand." *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (quotation omitted).

Here, the Court finds that the ALJ erred by failing to explain why he did not adopt the state agency psychological consultants' opinion that Plaintiff should be limited to brief

and superficial social interactions.  The ALJ's limitation to "up to" occasional interactions with supervisors and coworkers fails to account for the state agency psychological consultants' limitation to brief and superficial interactions.  *See Eden*, 2019 WL 7666532, at *2 ("The Commissioner responds that the limitation to 'brief, superficial interactions with others' is consistent with the ALJ's limitation to 'only occasional interaction with the public, co-workers, and supervisors.' I disagree. As other courts have recognized, 'occasional' and 'superficial' are not coterminous.") (citations and quotations omitted); *see also, e.g.*, *Matthew F. v. Kijakazi*, No. 3:20-cv-15564, 2022 WL 1442243, at *9 (D. N. J. May 6, 2022) ("[I]t is unclear to the Court why the ALJ, having found persuasive the [doctor's] limitation that Plaintiff could, *inter alia*, 'interact briefly/superficially with coworkers and supervisors,' did not include any such limitation in the [residual functional capacity]," and instead included a limitation to "occasional interaction"); *Elaine S. v. Comm'r of Soc. Sec.*, No. 3:20-cv-00324, 2022 WL 4102814, at *5 (S.D. Ohio Sept. 8, 2022) (remanding where "the ALJ failed to explain why he included a limitation to 'occasional' contact with others, but not a limitation to 'superficial' contact, as opined by the reviewing state agency psychologists upon whose opinions the ALJ relied").  The ALJ was therefore required to explain why he deviated from or imposed a lesser limitation than that found in the medical opinion evidence.  *See Lauer v. Apfel*, 245 F.3d 700, 704-05 (8th Cir. 2001) (the ALJ may not impose fewer limitations than those found in all the medical-opinion evidence and thereby formulate his own medical opinion).

Additionally, as already noted, the ALJ found the state agency psychological consultants' opinions that Plaintiff could handle only brief and superficial interactions

"persuasive," yet he limited Plaintiff to just occasional interactions. Tr. 83, 89. This leads the Court to question whether the ALJ simply omitted to address or "failed to appreciate the distinction between *occasional* and *superficial* interactions." *See Sue A. M.*, 2022 WL 14346260, at *4 (emphasis in original); *see also Runyon v. Comm'r of Soc. Sec.*, No. 2:20-cv-3820, 2021 WL 3087639, at *5 (S.D. Ohio July 22, 2021) (finding "the problem here is that the ALJ's discussion reveals that he failed to even consider whether Plaintiff did, in fact, require a limitation to only superficial interaction because he appeared not to appreciate the distinction between 'occasional' and 'superficial' interaction"), *report and recommendation adopted*, 2021 WL 3489615 (S.D. Ohio Aug. 9, 2021); *Simmer v. Kijakazi*, No. CIV-21-361-GLJ, 2022 WL 17831396, at *4 (E.D. Okla. Dec. 21, 2022). It may be that the ALJ intended the limitation to "occasional interaction" with others in the residual functional capacity to accommodate both the quantity and superficial quality of those interactions. But because the ALJ's analysis was incomplete and contains unresolved conflicts of evidence regarding a superficial-interactions limitation, the Court finds that remand is required for the ALJ to address further the opinion evidence on this issue.

Courts in this district have reached the same conclusion under similar facts. In *Christine F.*, for example, the state agency psychological consultants opined that the plaintiff was moderately limited in her ability to interact appropriately with others. 2022 WL 3648674, at *5. They further opined that the plaintiff was limited to "brief, infrequent, and superficial interactions with others." *Id*. The court found that remand was required for the ALJ to address the state agency psychological consultants' opinions further, explaining:

16

> The [residual functional capacity] . . . included a limitation to 'occasional interaction with coworkers, supervisors and the general public' . . . [but] did not contain a limitation involving brief or superficial interactions, as opined by the state agency psychological consultants. The ALJ should have offered an explanation as to why their opined limitation to the quality of Plaintiff's interactions with others was not incorporated in the [residual functional capacity].

*Id*. at *5 n.3.

Similarly, in *Kenneth J.V.*, the state agency psychological consultants opined that the plaintiff could work independently with superficial interactions with supervisors, coworkers, and the public. *See Kenneth J.V. v. Kijakazi*, No. 22-cv-373 (KMM/DJF), 2023 WL 2394397, at *4 (D. Minn. Jan. 27, 2023), *report and recommendation accepted*, 2023 WL 2388696 (D. Minn. Mar. 7, 2023). In the residual functional capacity, however, the ALJ limited the plaintiff to occasional interactions with supervisors and coworkers, but no customer service interaction with the public. *Id*. at *6. The court concluded that "there is a material difference between a superficial contact and an occasional contact limitation," and therefore concluded that the ALJ erred by failing to explain his rationale for the omission of a superficial contact limitation. *Id*. at *10.

The same situation occurred here. The state agency psychological consultants opined that Plaintiff could manage "brief and superficial social encounters." Tr. 299, 313-14, 340, 364. But the ALJ limited the Plaintiff to up to occasional interactions with supervisors and coworkers, and no customer service interaction with the public. Tr. 83. Because "there is a material difference between a superficial contact and an occasional contact limitation," as in *Kenneth J.V.*, the ALJ's error "is potentially outcome-

determinative and necessitates a remand." *See Kenneth J.V.*, 2023 WL 2394397, at *9-*10.

The Commissioner argues that there is not a material difference between a superficial contact and an occasional contact limitation in this case. The Commissioner contends that the ALJ accounted for the superficial contact limitation by limiting Plaintiff to unskilled work. Comm'r's Mem. in Supp. at 7. The Commissioner notes that the marker and bench assembler jobs have the lowest possible level of interaction with people according to the Dictionary of Occupational Titles. Comm'r's Mem. in Supp. at 7. The Commissioner relies on SSR 85-15, 1985 WL 56857, at *4, which states that unskilled work deals "primarily" with objects rather than data or people. Comm'r's Mem. in Supp. at 7.

Courts in this district, however, have rejected that argument and concluded that SSR 85-15 does not support the conclusion that "occasional interaction in the cont[ext] of unskilled work is equivalent to superficial interaction." *See Kenneth J.V.*, 2023 WL 2394397, at *10 ("Lacking any authority on point to support the Commissioner's position, the Court is unpersuaded that these terms define the same concepts."). Further, "[w]hile it is entirely possible the ALJ would equate these terms with 'superficial' interaction, the ALJ's decision does not address this question and the Commissioner cites to no authority defining these terms as necessarily equivalent." *See id*. at *11 (citing *Troy L. M.*, 2022 WL 4540107, at *16 (remanding when the ALJ failed to explain why he did not incorporate a superficial contact limitation into the residual functional capacity when the jobs identified by the vocational expert had the lowest possible level of interaction with people according

18

to the Dictionary of Occupational Titles); *Christine F.*, 2022 WL 3648674, at \*5 n.4 (rejecting the Commissioner's harmless error argument where "it [was] unclear from the description of the jobs in the Dictionary of Occupational Titles that these jobs do not require more than brief, superficial interactions)). Accordingly, additional development of the record is required to permit meaningful review of the ALJ's rationale. The Court therefore recommends that this matter be remanded.

In sum, it is simply not clear from the ALJ's decision why the ALJ found the state agency psychological consultants' opinions to be persuasive but declined to include a limitation to superficial interactions with others or explain how the residual functional capacity accommodated this limitation. Thus, the ALJ's analysis was incomplete and contains unresolved conflicts of evidence, and remand is required for the ALJ to further address the state agency psychological consultants' opinions regarding superficial interactions. The ALJ should address specifically the state agency psychological consultants' opinions that Plaintiff was limited to "brief and superficial social encounters," why he declined to include this limitation in the residual functional capacity, or explain how the residual functional capacity accommodated this limitation. *See, e.g., Kenneth J.V.*, 2023 WL 2394397, at \*11 ("On remand the ALJ would be free to adopt or to reject the Psychological Consultants' finding that Plaintiff is limited to "superficial contact" with others, to obtain new testimony from the vocational expert based on a hypothetical that incorporates this limitation, or to simply explain whether, in his analysis, the three jobs previously identified at step five require only superficial contact with supervisors and co-workers."). With such clarification by the ALJ and testimony elicited from a vocational

expert, it may even be that the jobs of marker, mail clerk, and bench assembler remain available. On remand, the ALJ should feel free to take additional testimony from a vocational expert if warranted under the circumstances.

## IV. RECOMMENDATION

Based upon the record, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1.    Plaintiff's Motion for Summary Judgment, ECF No. 19, be **GRANTED IN PART and DENIED IN PART**.

2.    The Commissioner's Motion for Summary Judgment, ECF No. 23, be **DENIED**.

3.    This matter be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Date: June ___28___, 2023                          _____*s/ Tony N. Leung*_____
                                                                   Tony N. Leung
                                                                   United States Magistrate Judge
                                                                   District of Minnesota

                                                                   *Sara R. v. Kijakazi*
                                                                   Case No. 22-cv-1271 (KMM/TNL)


## <u>NOTICE</u>

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).